# APPEAL NO.: 24-10418-JJ

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,

v.

DENNIS THOMPSON,
DEFENDANT-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

CASE NO.: 7:21-CR-00033-HL-TQL-1

# APPELLANT'S PRINCIPAL BRIEF

JESSICA M. LEE
Federal Defenders of the
Middle District of Georgia, Inc.
233 12th Street, Suite 400
Columbus, Georgia 31901
Tel:  (706) 358-0030
Fax: (706) 358-0029
Email:  jessy_m_lee@fd.org
Appellate Counsel for Mr. Thompson

## Appellant's Certificate of Interested Persons and Corporate Disclosure Statement

The undersigned appellate counsel of record for Appellant, Dennis Thompson, in compliance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, certifies that the following listed persons and parties have an interest in the outcome of this case:

**Conway, Byron, L. Jr.**, Executive Director, Federal Defenders of the Middle District of Georgia, Inc.;

**Deitrick, Sean**, Assistant United States Attorney, Middle District of Georgia;

**Langstaff, Thomas Q.**, United States Magistrate Judge, Middle District of Georgia;

**Lawson, Hugh**, District Court Judge, United States District Court, Middle District of Georgia;

**Leary, Peter D.**, United States Attorney, Middle District of Georgia; Middle District of Georgia;

**Lee, Jessica, M.**, Attorney for Defendant-Appellant, Dennis Thompson, Assistant Federal Defender, Federal Defenders of the Middle District of Georgia, Inc.;

**Profit, Sonja, B.**, Assistant United States Attorney, Middle District of Georgia;

**Saviello, Timothy R.**, Trial Attorney for Defendant-Appellant, Dennis Thompson, Assistant Federal Defender, Federal Defenders of the Middle District of Georgia, Inc.;

**Solis, Michael T.**, Assistant United States Attorney, Middle District of Georgia;

**Sullivan, Kelly, M.**, Former Trial Attorney and Assistant Federal Defender for Defendant-Appellant, Dennis Thompson, Federal Defenders of the Middle District of Georgia;

**Thompson, Dennis**, Defendant-Appellant;

**Victims:** There are no identifiable victims in this case.;

**Walker, Stuart**  Assistant United States Attorney, Middle District of Georgia; and,

No publicly traded company or corporation has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

Mr. Thompson leaves oral argument to the discretion of the Court.

# Table of Contents

Appellant's Certificate of Interested Persons and Corporate Disclosure Statement ........................................................................ C1 of 2

Statement Regarding Oral Argument ......................................................i

Table of Contents ....................................................................................ii

Table of Authorities...............................................................................iv

Statement of Subject Matter and Appellate Jurisdiction .......................1

Statement of the Issues............................................................................2

Statement of the Case .............................................................................3

    A. Course of Proceeding ......................................................................3

    B. Statement of Facts............................................................................5

    C. Standard of Review........................................................................16

Summary of the Argument ...................................................................18

Argument and Citation of Authority ....................................................20

    I.   THE DISTRICT COURT ERRED WHEN IT DENIED THE MOTION FOR MISTRIAL AFTER IT ALLOWED THE GOVERNMENT TO REOPEN DIRECT EXAMINATION TO ANSWER A JUROR'S QUESTION ....................................................20

    II.   THE DISTRICT COURT ERRED WHEN IT DENIED MR. THOMPSON FROM ADMITTING THE CERTIFIED CONVICTIONS OF MS. COURSON FOR IMPEACHMENT PURPOSES...................24

    III.   THE CONVICTION OF MR. THOMPSON FOR POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE MUST BE

REVERSED, BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT. ...................................................26

Conclusion ................................................................................32

Certificate of Compliance........................................................33

Certificate of Service ..............................................................34

# Table of Authorities

## Cases

*Cosby v. Jones*, 682 F.2d 1373 (11th Cir. 1982) ..................................... 17

*DeBenedetto v. Goodyear Tire and Rubber Company*, 754 F2d 512 (4th Cir. 1985) ...................................................................................... 20, 21

*United States v. Bush*, 47 F.3d 511 (2d Cir.1995) .................................. 21

*United States v. Cassiere*, 4 F.3d 1006 (1st Cir.1993) ............................ 21

*United States v. Cathey*, 591 F.2d 268 (5th Cir. 1979) ........................... 16

*United States v. Christopher*, 923 F.2d 1545 (11th Cir. 1991) ............... 16

*United States v. Collins*, 226 F.3d 457 (6th Cir.2000) ........................... 20

*United States v. Cooper*, 203 F.3d 1279 (11th Cir. 2000) ...................... 17

*United States v. Derose*, 74 F.3d 1177 (11th Cir. 1996) ......................... 26

*United States v. Faust*, 456 F.3d 1342 (11th Cir. 2006) ......................... 26

*United States v. Feinberg*, 89 F.3d 333 (7th Cir.1996) .................... 20, 21

*United States v. Gil,* 204 F.3d 1347 (11th Cir. 2000) ............................. 16

*United States v. Graham*, 858 F.2d 986 (5th Cir. 1988) ......................... 16

*United States v. Groene*, 998 F.2d 604 (8th Cir.1993) ........................... 21

*United States v. Hernandez*, 176 F.3d 719 (3d Cir.1999) ...................... 20

*United States v. Isnadin*, 742 F.3d 1278 (11th Cir. 2014) ..................... 27

*United States v. Johnson*, 892 F.2d 707 (11th Cir. 1989) ...................... 21

*United States v. Leonard*, 138 F.3d 906 (11th Cir. 1998) ...................... 29

iv.

*United States v. LeQuire*, 943 F.2d 1554 (11th Cir. 1991)........................27

*United States v. Lopez-Ramirez,* 68 F.3d 438 (11th Cir. 1995) ..............29

*United States v. Louis*, 861 F.3d 1330 (11th Cir. 2017) .........................17

*United States v. Lyons*, 53 F.3d 1198 (11th Cir. 1995)...........................30

*United States v. Mendez*, 117 F.3d 480 (11th Cir. 1997) ........................16

*United States v. Poole*, 878 F.2d 1389 (11th Cir. 1989)..........................31

*United States v. Tisdale*, 817 F.2d 1552 (11th Cir. 1987) .....................16

*United States v. Woodward*, 531 F.3d 1352 (11th Cir. 2008) .................26

*United States v.Sutton*, 970 F.2d at 1005-06.........................................22

## Statutes

18 U.S.C. §3231 .......................................................................................1

18 U.S.C. §3742 .......................................................................................1

21 U.S.C §841(b)(1)(A)(viii) ................................................................3, 6

21 U.S.C. §841(a)(1).............................................................................3, 5

28 U.S.C. §1291 ......................................................................................1

## Rules

11th Cir. R. 26.1-1 ...............................................................................C1

11th Cir. R. 32-4 ....................................................................................33

Fed. R. App. P. 26.1 ..............................................................................C1

Fed. R. App. P. 32 (a)(7) .......................................................................33

Fed. R. App. P. 32(a)(7)(B)(i)................................................................33

iv.

Fed. R. App. P. 4(b)(1)(A)(i) .................................................................1

Fed. R. Evid. 609 ..................................................................... *passim*

Fed. R. Evid. 609(a) ..............................................................25

Fed. R. Evid. 806 ..................................................................... *passim*

## Statement of Subject Matter and Appellate Jurisdiction

This is a direct appeal in a criminal proceeding in the United States District Court for Middle District of Georgia, Valdosta Division. The district court had jurisdiction of this case pursuant to 18 U.S.C. §3231 because the defendant was charged with an offense against the laws of the United States. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742, which gives the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The district court-imposed sentence on January 17, 2024 and entered the final judgment on January 25, 2024. Mr. Thompson filed his notice of appeal on February 7, 2024, making his appeal timely pursuant to Fed. R. App. P. 4(b)(1)(A)(i).

## Statement of the Issues

I.    THE DISTRICT COURT ERRED WHEN IT DENIED THE MOTION FOR MISTRIAL AFTER IT ALLOWED THE GOVERNMENT TO REOPEN DIRECT EXAMINATION TO ANSWER A JUROR'S QUESTION

II.   THE DISTRICT COURT ERRED WHEN IT DENIED MR. THOMPSON FROM ADMITTING THE CERTIFIED CONVICTIONS OF MS. COURSON FOR IMPEACHMENT PURPOSES

III.  THE CONVICTION OF MR. THOMPSON FOR POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE MUST BE REVERSED, BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT.

## Statement of the Case

### A. Course of Proceeding

A federal grand jury in the Middle District of Georgia indicted Mr. Thompson for (Count 1) Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(A)(viii) on July 8, 2021. (Doc. 1).[1] An arrest warrant was issued, and Mr. Thompson had his initial appearance on March 22, 2022. Mr. Thompson appeared via video for his arraignment and entered his not guilty plea. (Doc. 17). He was ordered detained pending final resolution of his case. (Doc. 14)

On July 17, 2023, a jury trial was held, and Mr. Thompson was found guilty of Count 1. (Doc. 59). The U.S. Probation Office filed a draft presentence report on October 10, 2023. (Doc. 65). The U.S. Probation Office calculated Mr. Thompson sentencing guideline range to be 292 to 365 months on a base offense level of 38 and Criminal History category of III. (Doc. 65 at 12). The final presentence report was filed on November 9, 2023 and a revised final presentence report on January 3,

---

[1] Undersigned counsel refers to the record on appeal as (Doc. X).

2024. (Doc. 68, 70). The revised final presentence report had Mr. Thompson's guideline range to be 235 to 293 months. (Doc. 70 at 12).

The district court sentenced Mr. Thompson on January 17, 2024 to 180 months to run consecutive to the case in Clinch County, Georgia. (Doc. 74). The final judgment was filed on January 25, 2024. *Id.* Mr. Thompson filed his timely notice of appeal on February 7, 2024. (Doc. 77). This appeal follows.

B. Statement of Facts

    i.    <u>Offense Conduct</u>

On August 30, 2020, a traffic stop was conducted on a Crown Victoria driven by Mr. Thompson.(Doc. 70 at 3-4). Lanier County Sheriff's Office had information that the vehicle would be transporting a quantity of methamphetamine. *Id.* Officers attempted to stop the vehicle, but the driver sped up and finally stopped near Atkinson County, Georgia. *Id.* Officers detained the driver, Mr. Thompson and April Courson, the front seat passenger. *Id.*

A Georgia Department of Corrections canine unit was brought to the scene and alerted on the vehicle. *Id.* Officers found a leather bag hanging from the rear passenger window. *Id.* Officers opened the bag and found a large quantity of methamphetamine, weighing 976 grams of 83% pure methamphetamine. *Id.*

    ii.    <u>Court Proceedings</u>

Mr. Thompson remained in Lanier County custody until his federal arraignment. A federal grand jury in the Middle District of Georgia indicted Mr. Thompson for (Count 1) Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §841(a)(1) and

§841(b)(1)(A)(viii) on July 8, 2021. (Doc. 1). An arrest warrant was issued, and Mr. Thompson had his initial appearance on March 22, 2022. Mr. Thompson appeared via video for his arraignment and entered his not guilty plea. (Doc. 17). He was ordered detained pending final resolution of his case. (Doc. 14)

### iii.   Jury Trial

A jury trial was scheduled for July 17, 2023. The government called five witnesses: (1) Former Investigator Edward Kevin Lee, (2) Former Sergeant Christopher Luke (3) Forensic Chemist Supervisor Kyle Brown, (4) Deputy Philip Hay, and (5) Agent Brett McDaniel.

The government first called former Investigator Edward Kevin Lee who was the lead agent at the time of the case. (Doc. 87 at 34). The government asked Mr. Lee why he was no longer with the task force, and he testified that he received several DUI convictions and was no longer employed with the Lanier County Sherriff's office. (Doc. 87 at 36-40). Mr. Lee goes on to explain how the investigation of Mr. Thompson began and his role. Mr. Lee testified that a confidential informant named April Courson was involved, and officers met with her to give her a GPS tracker. (Doc. 87 at 40). "Ms. Courson had told me they

would be going to Atlanta to purchase a large quantity of methamphetamine." (Doc. 87 at 20-22). Mr. Lee watched the tracker from his house and saw that the tracker traveled to Atlanta "like she had said" and then came back on August 30, 2020. (Doc. 87 at 41-42). He was watching the tracker and waiting for it to come into Lanier County so he could contact Sergeant Chris Luke to conduct a traffic stop until he arrived at the scene. (Doc. 87 at 42). A zipper bag that was hanging out of the window was found in the back passenger side. Mr. Lee told the other officers to "not open anything until" he got there. (Doc. 87 at 48). Once he arrived, he searched the bag and found a "bag containing the plastic container with the methamphetamine." (Doc. 87 at 51). He took the methamphetamine back to the office and it tested positive for the presence of methamphetamine. (Doc. 87 at 58). It was then sent off to the crime lab for testing. (Doc. 87 at 61-63). The government then finished their direct of Mr. Lee and the court took a recess.

Before cross-examination, the district court told counselors that the jury had a question after Mr. Lee testimony:

> THE COURT: Counsel, before we hear cross-examination, I have a note from the jury. One juror sends this question:

7.

"Where was the tracking device located?" Do you want to reopen direct?

MS. PROFIT: Yes, sir.

THE COURT: Okay. Let's let her do that. Then you can cross.

(Doc. 87 at 66-67). Mr. Thompson objected and stated that this was a fact question, and the government had their opportunity:

Counsel for Mr. Thompson: The government had their chance. They asked all the questions they thought they needed. The fact that the juror has unanswered questions in their own mind is something for the juror to consider. So, it feels like an unfair advantage for the government to respond to something that they failed to do in a juror's mind.

(Doc. 87 at 67; 14-19). The court overruled the objection and responded: "Well, the rule in this case is that she's going to get to reopen direct." (Doc. 87 at 67; 24-25). The government then reopened direct and asked Mr. Lee where the tracker was located and if anything was found in there. Mr. Lee testified that it was Ms. Courson's luggage, and the tracker was located inside of it. (Doc. 87 at 68).

Mr. Thompson was then allowed to cross-examine Mr. Lee. During the cross, Mr. Lee testified that April Courson approached him about an upcoming drug deal. (Doc. 87 at 76). Ms. Courson told Mr. Lee that she

was needed to drive the vehicle to Atlanta. *Id.* Mr. Thompson then questioned Mr. Lee about whether he had properly vetted Ms. Courson as an informant. (Doc. 87 at 78-79). Mr. Lee testified that he ran her criminal history but could not remember her convictions. (Doc. 87 at 80-81). Then he was asked whether he vetted her connection to Mr. Thompson and the information she provided.

> Q. Stop right there. Regarding what she told you, did you do any independent investigation beyond that?
>
> A. Just in what she advised me.
>
> Q. And so based upon what she told you, you decided to go ahead and use her in this case; right?
>
> A.    I did.

(Doc. 87 at 81; 14-19). Mr. Thompson then asked Mr. Lee whether he talked to his supervisors about the case or using Ms. Courson as an informant. Mr. Lee replied: "I don't usually -- to keep the case safe, I don't usually talk to supervisors about my drug cases." (Doc. 87 at 83). Mr. Thompson then asked Mr. Lee whether, as proper protocol and procedure, he recorded his interactions with Ms. Courson.

> Q. Understood. But in this particular case you didn't make any record of your communication with Ms. Courson?
> A.    Just giving her the tracker –
> ...

9.

Q. But other than that, no other record –

A. Nothing.

(Doc. 87 at 85-86). Mr. Lee then testified that he did speak to Ms. Courson when they arrived in Atlanta, but that he did not record or memorialize that conversation in any way. (Doc. 87 at 87-88). Mr. Thompson then asked Mr. Lee whether he contacted law enforcement in the Atlanta area to alert them of the drug transaction.

A. No, sir, I didn't. I didn't know where they were going --
who they were going to meet. I saw where they went, but I had
no idea who they were going to meet.

(Doc. 87 at 89; 3-5). Even after knowing Mr. Thompson and Ms. Courson were staying at a hotel before returning to Lanier County, Mr. Lee did not alert any law enforcement or take any additional actions.

Q. So at that point you knew, according to Ms. Courson, that
she was in a hotel. You knew where the hotel was and there
were drugs there?

A. Yes, sir.

Q. Yet you didn't call anybody to go surveil the hotel to see
if they could see anything?

A.    No, sir.

(Doc. 87 at 89; 17-23).

10.

Mr. Thompson then questioned Mr. Lee about the traffic stop and arrest. He questioned Mr. Lee whether Ms. Courson gave any statement after the arrest, detailing what happened in Atlanta. Mr. Lee testified that she did, but none of the interaction was recorded. (Doc. 87 at 96).

During re-cross, Mr. Thompson questioned Mr. Lee about what evidence does he have that Mr. Thompson was put in the car by him and that the only information came from Ms. Courson:

Q. How do you know?

A. Because I just believe what --

Q. Because you believe. That's a big difference, is it?

A. Well, I know it's his, though.

Q. You had the capability to get some more proof, didn't you?

A. I didn't feel the need to call anybody in Atlanta.

Q. You had the capability to get some more proof, didn't you?

A. Maybe so.

Q. But you chose not to?

A: Yes, sir.

(Doc. 87 at 102; 17-25).

The government then called Former Sergeant Christopher Luke who conducted the traffic stop. Mr. Luke testified that he was notified by Mr. Lee to do "locate the vehicle and do an investigative stop on it to see if we could locate the drugs." (Doc. 87 at 108). Along with Deputy

11.

Reid and Deputy Hay, they attempted to pull the white Crown Victoria over. The vehicle stopped and officers commanded the driver to exit the vehicle and get down on the ground. Deputy Hay was holding a gun on Mr. Thompson while he was handcuffing him. Deputy Reid was assisting the passenger who was in distress.

During cross-examination, Mr. Thompson clarified with Mr. Luke that former investigator Lee did not tell him about the drug investigation or the confidential informant, the passenger, April Courson. (Doc. 87 at 119-125).

The government then called Forensic Chemist Kyle Brown from NMS Labs who tested the drugs found in the vehicle. He confirmed the drugs were methamphetamine, at a weight of 876 grams, and with a purity of 83 percent. (Doc. 87 at 134-135).

The last witness the government called was FBI Agent Brett McDaniel. (Doc. 88 at 27). Agent McDaniel testified that he became involved with the case after an arrest was made of Mr. Thompson and the state sought federal prosecution due to the weight of the drugs. (Doc. 88 at 30-31). On cross-examination, Mr. Thompson questioned Agent McDaniel whether he vetted April Courson as well as an

informant and what information was provided by former Investigator Lee.

> Q. Okay. And he didn't provide to you any reports or documentation of how he vetted her at the beginning of this investigation, did he?
>
> A. No, sir. The information provided by Investigator Lee would have become a part of the case file that would have been provided in discovery. So, if it's not a part of discovery, then it was not provided to me, no, sir.

(Doc. 88 at 41; 13-19). Agent McDaniel then responded to Mr. Thompson that he did know that Ms. Courson had multiple convictions.

> Q. And so you found multiple convictions for Ms. Courson, didn't you?
>
> A. I believe so, yes, sir.
>
> Q. And you found multiple convictions for fraudulent crimes. Is that fair to say?
>
> A. Yes, sir. I believe they were bad check charges, but yes, sir.

(Doc. 88 at 43). After Agent Brett McDaniel testified, the government rested.

Mr. Thompson then moved for a mistrial based on the jury question and it was overruled. (Doc. 88 at 61). Then he moved for a directed verdict under Rule 29 because there was insufficient evidence

13.

to prove that Mr. Thompson was guilty of possession with intent to distribute methamphetamine. (Doc. 88 at 61-62). The district court overruled the motion as well.

The district court then inquired whether Mr. Thompson was going to present any witnesses. Mr. Thompson told the court that Dr. Myra Gilbert, an investigator with the Federal Defender's Office, would testify about the criminal convictions of Ms. Courson as a hearsay declarant under Fed. R. Evid. 609 and 806. The government objected that because Ms. Courson's statements after the arrest were not admitted into evidence, then she is not a hearsay declarant. However, Mr. Thompson pointed out to the court that former Investigator Lee did testify to statements made by Ms. Courson. (Doc. 88 at 69, 71) The district court denied Mr. Thompson's motion and he did not present any other witnesses.

The parties then gave closing argument, and the jury came back with a verdict of guilty. (Doc. 59).

iv.    <u>Sentencing</u>

The district court held the sentencing hearing on January

14.

17, 2024. Prior to the hearing, Mr. Thompson filed a sentencing memorandum with the court noting his upbringing, his struggles with being around drugs and trying to take care of his family. (Doc. 71). Several letters of support were submitted in addition to his sentencing memorandum. *Id.*

In request for a reasonable sentence, Mr. Thompson asked for a variance to the mandatory minimum in the case to 120 months. Mr. Thompson noted that the methamphetamine disparity in the sentencing guidelines have become like the crack-cocaine disparity:

> "I would argue that methamphetamine where we stand right now in our federal system is treated the same way compared to other drugs that crack cocaine was treated prior to the Fair Sentencing Act. And in support of that I will point out that methamphetamine is the drug of choice for poor people because it is the cheapest drug." (Doc. 84 at 11; 3-9).

After consideration of both parties, the district court sentenced Mr. Thompson to a sentence of 180 months to run consecutive to the case in Clinch County, Georgia.

C. Standard of Review

The decision to grant a mistrial is within the sound discretion of the district court, as the judge is in the best position to evaluate the prejudicial effect of improper testimony. *United States v. Mendez*, 117 F.3d 480 (11th Cir. 1997). A district court's refusal to grant a mistrial will be reviewed under an abuse of discretion. United States v. Christopher, 923 F.2d 1545 (11th Cir. 1991).

A district court's decision to admit evidence of prior felony convictions pursuant to Fed. R. Evid. 609 and 806 is reviewed for abuse of discretion. *United States v. Tisdale*, 817 F.2d 1552, 1555 (11th Cir. 1987); *United States v. Cathey*, 591 F.2d 268, 274 (5th Cir. 1979); *United States v. Graham*, 858 F.2d 986, 990 (5th Cir. 1988).

Whether the evidence is sufficient to sustain a defendant's conviction is a question of law which this Court reviews *de novo.* *United States v. Gil,* 204 F.3d 1347, 1349 (11th Cir. 2000). This Court then reviews the evidence in the light most favorable to the government "to determine whether a reasonable jury, choosing among reasonable constructions of the evidence, could have found that the defendant was guilty beyond a reasonable doubt." *United States v. Cooper*, 203 F.3d

16.

1279, 1285 (11th Cir. 2000). "If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. 2017) (quoting *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982).

## Summary of the Argument

The district court abused its discretion when it allowed the government to reopen direct examination to answer a juror's question and denied Mr. Thompson's motion for mistrial. While the practice of permitting jurors to ask questions has been upheld, the district court tainted the jury when it allowed the government to pose the question, failed to give instructions or cautions to the jury and essentially helped the government to prove its case. The prejudice caused by the court's decision to deny Mr. Thompson's objection and his motion for mistrial was an abuse of discretion.

Second, the district court abused its discretion when it denied Mr. Thompson from entering certified convictions of April Courson, who was a hearsay declarant, and was therefore subject to impeachment. The denial substantially impaired Mr. Thompson from presenting a defense.

Last, there was insufficient sufficient evidence for a reasonable factfinder to conclude that Mr. Thompson was guilty beyond a reasonable doubt of possessing with intent to distribute methamphetamine. The record does not show that Mr. Thompson was in possession of any controlled substance and that he had the intent to

distribute the controlled substances. There was insufficient evidence that any trier of fact could have found Mr. Thompson guilty of possession with intent to distribute the methamphetamine and his conviction should be reversed.

## Argument and Citation of Authority

I. THE DISTRICT COURT ERRED WHEN IT DENIED THE
MOTION FOR MISTRIAL AFTER IT ALLOWED THE
GOVERNMENT TO REOPEN DIRECT EXAMINATION TO
ANSWER A JUROR'S QUESTION

After the government's direct examination of its witness, Edward
Kevin Lee, the jury submitted a question to the court. (Doc. Trial at 67-
68). The court told counsels the question and then immediately asked
the government if they wanted to reopen direct. *Id.* Mr. Thompson
objected and noted that this was a fact question and the government
already rested on this witness. The district court disregarded Mr.
Thompson's objection and allowed the government to re-open direct
examination. Mr. Thompson moved for a mistrial at the end of the
government's case, and it was denied by the district court.

While the practice of allowing jurors to ask questions of witnesses
has been upheld and is within the discretion of the trial judge, *see e.g.*
*United States v. Collins*, 226 F.3d 457 (6th Cir.2000); *United States v.*
*Hernandez*, 176 F.3d 719, 724 (3d Cir.1999); *United States v. Feinberg*,
89 F.3d 333, 336 (7th Cir.1996); *DeBenedetto v. Goodyear Tire and*
*Rubber Company*, 754 F2d 512, 516 (4th Cir. 1985); *United States v.*

*Bush*, 47 F.3d 511, 515 (2d Cir.1995); *United States v. Cassiere*, 4 F.3d 1006, 1017–18 (1st Cir.1993); *United States v. Groene*, 998 F.2d 604, 606 (8th Cir.1993) there are cautions and reservations about the practice. *See, e.g. United States v. Johnson*, 892 F.2d 707, 711 (11th Cir. 1989) (Lay, C.J., concurring) ("[Allowing juror questions during trial is inherently prejudicial and should not be condoned."); *DeBenedetto*, 754 F.2d at 516 ("[T]he practice of juror questioning is fraught with dangers which can undermine the orderly process of the trial to verdict.") Further, allowing juror questioning during criminal trials, increases the risk of juror impartiality and may affect the government's burden of proof and production of every element of the offense.

To safeguard against these risks, district courts should "weigh the potential benefit to the jurors against the potential harm to the parties, especially when one of those parties is a criminal defendant. *United States v. Feinberg*, 89 F.3d 333 (7th Cir. 1996). Further, questions should be posed to the trial judge in writing, who then can ask the witness in a neutral manner and allow counsels to object privately outside of the jury's presence. *See Bush*, 47 F.3d at 516. The trial judge should also instruct the jury throughout the trial the limited

purpose of the questions, to not take a position before the evidence has closed, and "that questions are to be reserved for important points, that the rules of evidence may frequently require the judge to eschew certain questions, and that no implication should be drawn if a juror-inspired question withers on the vine." *Sutton*, 970 F.2d at 1005-06.

Here, the district court abused its discretion and committed error when it allowed the government to reopen direct examination to answer the jury's question. The district court did not give Mr. Thompson a fair opportunity to make an objection to the question until after the fact. The district court ruled when it essentially stated "Do you want to reopen direct?...Okay, let's let her do that. Then you can cross." (Doc. 87 at 67; 1-4). The district court abused its discretion and did not give Mr. Thompson an opportunity to object before ruling. Further, the government, and not the judge, posed the question to the witness and it allowed the government to go into additional questions. The district court never gave any instructions to the jury before the requestioning nor any cautions to the jury. Moreover, this was not a fact intensive case, and the burden was on the government to establish these facts during their direct and they failed to do so.

22.

At the end of the government's case, Mr. Thompson moved for a mistrial. (Doc. 88 at 61). Mr. Thompson noted in particular the concerns that *Bush* echoed:

> "I think the jury now has an expectation that they can ask questions that will be answered. And if they ask a question that is directed to something that they might want an answer that I would provide, the circumstances may be that I cannot provide it." (Doc. 87 at 137; 8-12)

The district court responded that the question was not improper and that the decision "to reopen the evidence is a matter that lies totally within the discretion of the trial judge". (Doc. 87 at 138; 16-18). Further, the district court commented why Mr. Thompson would "motion for mistrial baffles" the court. (Doc. 87 at 138; 19-20).

The district court abused its discretion in allowing the government to reopen direct examination, did not properly advise the jurors nor provide any instructions on jury questions, and tainted the jury. The district court's actions allowed the government a "second bite at the apple" and unfairly prejudiced Mr. Thompson's due process rights.

23.

## II. THE DISTRICT COURT ERRED WHEN IT DENIED MR. THOMPSON FROM ADMITTING THE CERTIFIED CONVICTIONS OF MS. COURSON FOR IMPEACHMENT PURPOSES

Former investigator Lee testified to statements made by Ms. Courson about Mr. Thompson and the drug deal set-up. During his case, Mr. Thompson then sought to introduce certified convictions of Ms. Courson to attack her credibility. The district court abused its discretion when it denied Mr. Thompson the ability to introduce her certified convictions that substantially impaired his defense.

Federal Rules of Evidence 806 provide in pertinent part that:

> "When a hearsay statement has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806

To attack a witness's credibility, a witness may be impeached by evidence of a criminal conviction under Federal Rules of Evidence 609. As clarified in the cross-reference under Rule 609:

> "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited form his or  established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the

24.

defendant, or (2) involved dishonesty or false statement, regardless of the punishment." Fed. R. Evid. 609(a).

Taken together, this provides that if a hearsay statement is admitted into evidence, the declarant is a witness, and his credibility is subject to impeachment. Here, Ms. Courson told Mr. Lee that "they would be going to Atlanta to purchase a large quantity of methamphetamine." (Doc. 87 at 41; 21-22). That she was needed to drive the vehicle to Atlanta. (Doc. 87 at 76). She told Mr. Lee the type of vehicle and tag number they would be traveling in. (Doc. 87 at 80-81). And that she had seen Mr. Thompson with large sums of money. (Doc. 87 at 81). Further, Mr. Lee testified that Ms. Courson made a phone call to him that she was in Atlanta, that the drugs had been picked up and they were staying at a hotel. (Doc. 87 at 88-89). Ms. Courson is a hearsay declarant based on the statements she made to former investigator Lee about Mr. Thompson and the drug transaction set-up. Her testimony is treated like that of a witness under Fed. R. Evid. 806, and therefore can be subject to impeachment as a witness under Fed. R. Evid. 806 and 609. Her certified convictions were admissible for impeachment purposes under Fed. R. Evid. 609. The district court abused its discretion when they found she was not a witness and denied

25.

Mr. Thompson from entering Ms. Courson's certified convictions that attacked her credibility and substantially impaired his defense.

III.     THE CONVICTION OF MR. THOMPSON FOR POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE MUST BE REVERSED, BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT.

To convict a defendant of possession with intent to distribute a controlled substance, the government must prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance with intent to distribute. *United States v. Faust*, 456 F.3d 1342, 1345. (11th Cir. 2006). The government may prove possession by actual or constructive possession. *United States v. Woodward*, 531 F.3d 1352 (11th Cir. 2008). Actual possession requires evidence that the defendant had either physical possession or personal dominion. *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996). Here, the evidence at trial was insufficient to convict Mr. Thompson with possession of methamphetamine with intent to distribute because it was entirely circumstantial. "Where the government relies on circumstantial evidence, reasonable inferences, and not mere speculation, must

26.

support the jury's verdict." *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014).

       i.     *There was no evidence that Mr. Thompson was in actual or constructive possession of the drugs.*

Uncorroborated testimony of an accomplice is sufficient to support a conviction if it is not on its face incredible or otherwise insubstantial. *United States v. LeQuire*, 943 F.2d 1554 (11th Cir. 1991). For a witness's testimony to be incredible or insubstantial on its face it must be testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature. *Id.*

The government rested its case on the information from a confidential informant, April Courson, who was allegedly in the vehicle with Mr. Thompson. However, Ms. Courson never testified nor were any recordings provided detailing their trip to Atlanta and how the drugs were received. (Doc. 87 at 85-86). There was no direct evidence linking Mr. Thompson to possession of the drugs, whether actual or constructive. Former Investigator Lee testified that he never did any independent investigation of the information provided by Ms. Courson about the deal. (Doc. 87 at 81). Further, no additional surveillance was

27.

done on Mr. Thompson and Ms. April Courson while they traveled to Atlanta. (Doc. 87 at 89, 102). There was no evidence to show where the drugs were picked up, that Mr. Thompson was the individual who purchased the drugs and had it in his possession or where the drugs were placed in the vehicle. (Doc. 87 at 89) Investigator Lee admitted none of their interaction was ever recorded. (Doc. 87 at 90). There were no text messages or recorded phone calls to corroborate the events that took place on August 29, 2020. (Doc. 87 at 88, 90). Further, Investigator Lee did not ask for back-up help, or additional police support out of Atlanta. (Doc. 87 at 89-90).  The only information was a GPS tracking device to surveil the vehicle's movement and the tracker was found in Ms. Courson's luggage. (Doc. 87 at 68). No additional evidence or surveillance was done to corroborate that Mr. Thompson was the sole individual who purchased and possessed the methamphetamine with intent to distribute.

The only individual who could have corroborated the events of that day was Ms. Courson, who was not called to testify. She was the only individual who could provide evidence of what happened on August 29, 2020. However, she did not testify and none of her interviews were

provided as evidence. Further, former Investigator Lee's did not testify about anything Ms. Courson said happened on the way back from Atlanta. His testimony alone was not sufficient to prove that Mr. Thompson was the purchaser of the methamphetamine. He failed to do additional surveillance to corroborate Ms. Courson's information, did not provide any recordings or evidence to show that Mr. Thompson purchased the drugs and was the sole possessor.

Mere association with a conspirator and presence in a vehicle which engages in counter-surveillance maneuvers is not sufficient to establish possession with intent to distribute. *United States v. Lopez-Ramirez,* 68 F.3d 438 (11th Cir. 1995). In *United States v. Leonard*, 138 F.3d 906 (11th Cir. 1998), the court reversed the conviction of a passenger in an automobile who was convicted of possession with intent to distribute several kilos of cocaine that were hidden in the tailgate. While the jury could have inferred that the defendant was aware of the cocaine in the vehicle, there was no evidence linking him to the possession of the drugs, either actually or constructively. A defendant may not be found guilty of illegally distributing drugs merely because he was present at an illegal sale of drugs. *United States v. Lyons*, 53

F.3d 1198, 1201 (11th Cir. 1995). Neither may a defendant be found guilty because he closely associated with the perpetrator, had knowledge of the offense, or even sympathetically observed the activity. *Id.*

Here, Ms. Courson originally told former Investigator Lee that she would be driving the vehicle to Atlanta and back. (Doc. 87 at 78, 87). However, during the traffic stop, Mr. Thompson was the one driving the vehicle and Ms. Courson was the passenger. It is unknown who drove the vehicle to Atlanta and Ms. Courson could have been the individual who drove the vehicle because she knew who the supplier was and where to purchase the drugs; Mr. Thompson could have been along for the ride and not know why Ms. Courson was planning on doing in Atlanta. The GPS tracker does not show where Ms. Courson was sitting in the vehicle or exact location during the travel to Atlanta. There was insufficient evidence to prove that Mr. Thompson had knowledge of who the supplier was, where to travel to and was the sole possessor and purchaser of the drugs.

Even if the court were to find that Mr. Thompson was in possession of the drugs, there was no evidence that he knowingly

intended to distribute the drugs. To prove intent to distribute, it "can be proven circumstantially from, among other things, the quantity of cocaine and the existence of implements such as scales commonly used in connection with the distribution of cocaine." *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) The quantity alone is insufficient to prove that Mr. Thompson was in possession with intent to distribute. There were no telltale signs of distribution by Mr. Thompson introduced into evidence or testified to during the trial that could lead a reasonable juror to conclude that there was a plan to deliver the drugs and that was Mr. Thompson's intent. Even viewing the evidence in light most favorable to the government, no trier of fact could find proof beyond a reasonable doubt. At best, the totality of the evidence a raised a question of Mr. Thompson's guilt and does not remove all reasonable doubt in this case. Mr. Thompson's conviction should be reversed, and his sentence vacated.

## Conclusion

For these reasons, Mr. Thompson respectfully requests that this Court reverse his conviction and vacate his sentence.

Respectfully submitted this 7th day of August 2024.

JESSICA M. LEE
Federal Defenders of the
Middle District of Georgia, Inc.
233 12th Street, Suite 400
Columbus, Georgia 31901
Tel:  (706) 358-0030
Fax: (706) 358-0029
Email: jessy_m_lee@fd.org
Appellate Counsel for Mr. Thompson

## Certificate of Compliance

Pursuant to Fed. R. App. P. 32 (a)(7), I, Jessica Lee, appellate counsel for Mr. Thompson, hereby certify that the number of words in this brief, as counted by the Microsoft Office Word processing system, according to the method described in 11th Cir. R. 32-4, is <u>5610</u> words, which is less than the 13,000 allowed for appellate briefs by Fed. R. App. P. 32(a)(7)(B)(i).

JESSICA M. LEE
Federal Defenders of the
Middle District of Georgia, Inc.
233 12th Street, Suite 400
Columbus, Georgia 31901
Tel:  (706) 358-0030
Fax: (706) 358-0029
Email:  jessy_m_lee@fd.org
Appellate Counsel for Mr. Thompson

Certificate of Service

I, Jessica Lee, hereby certify that on August 7, 2024, electronically filed the foregoing *Appellant's Principal Brief* with the Clerk of Court for the Eleventh Circuit using the CM/ECF Appellate system, which will send electronic notification of such to all counsel of record. I also certify that I caused a copy of the foregoing *Appellant's Principal Brief* to be served in paper format upon Mr. Thompson, by placing a copy of the same in the United States Mail, postage prepaid, addressed to: Mr. Dennis Thompson, GA Diagnostic Class Prison, P.O. Box 3877 2978 Hwy 36, West Jackson, GA 30233.  I further certify that I caused the foregoing submission to be dispatched for filing with the Clerk of Court by Federal Express overnight delivery.

JESSICA M. LEE
Federal Defenders of the
Middle District of Georgia, Inc.
233 12th Street, Suite 400
Columbus, Georgia 31901
Tel:  (706) 358-0030
Fax: (706) 358-0029
Email:  jessy_m_lee@fd.org
Appellate Counsel for Mr. Thompson

34.